In the Matter of the Application of THE AMSTERDAM, JOHNSTOWN AND GLOVERSVILLE RAILROAD COMPANY for a Certificate Required by Section 59 of the General Railroad Law.

*Review of the determination of the Railroad Commissioners, under section 59 of chapter 676 of 1892 — burden of proof — duty of the board — franchise, how obtained — a certificate does not issue as a matter of right — determination of the board is a matter of discretion — charging excessive rates — presumption as to the performance of duty by public officers.*

While section 59 of chapter 676 of the Laws of 1892 grants to the General Term of the Supreme Court power to review the action of the Board of Railroad Commissioners in refusing to grant the certificate therein provided for, such act plainly indicates that the court is to treat the application as in the nature of a review of the decision of a subordinate tribunal, and not as it would an original application made to it in the first instance.

The burden rests upon the petitioner to show affirmatively that the commissioners erred in their determination, and the commissioners should be credited with some technical knowledge which the court is not presumed to possess, and unless the court, upon the review, can see that the decision of the Board of Railroad Commissioners was founded upon erroneous legal principles, or that it proceeded contrary to the clear weight of the evidence in arriving at its conclusion upon any question of fact, or that it has abused the discretion vested in it, and has arbitrarily refused to issue the necessary certificate, the court will not reverse the determination of the board and compel it to issue such certificate.

The Board of Railroad Commissioners is vested with the supervision of the railroads of the State. It is made its special and peculiar duty to investigate and inform itself as to the condition of existing roads, and as to the needs of the various parts of the State for transportation facilities; and its opinion upon such matters, in regard to which a proper discharge of its official duty requires it to be specially informed, is entitled to respect and consideration.

Local sentiment, aroused by the alleged misuse or abuse by a railroad company of an existing franchise, affords no sufficient reason for granting to another corporation a railway franchise to erect and maintain a practically parallel road, upon the ground that public convenience and necessity require the construction of another road, nor is the expression of the opinion and desire of various witnesses " that public convenience and necessity require the construction" of a certain road evidence of such public necessity and convenience, and it cannot take the place thereof.

The privilege of constructing and operating a railroad is not one that exists in the incorporators of a railway company as a common right. It is a privilege or franchise that is granted by the State, and can only be obtained by complying with the laws adopted by the State regulating the granting of such franchises.

Prior to the enactment of section 59 of chapter 676 of the Laws of 1892 it was within the power of fifteen or more citizens to form a railroad corporation and

to lay its tracks through any section of the State upon securing from the property owners the necessary right of way, but under such section, before a new corporation can construct a railroad, the corporation must secure from the Railroad Commissioners their certificate that "public convenience and necessity require the construction of said railroad," and the corporation applying for such certificate necessarily holds the affirmative upon that question, and it devolves upon it to show that its construction is required by public convenience and necessity.

The certificate does not issue to it simply upon its filing its application as a matter of right, nor is the company entitled to the certificate as a matter of right in the event of no one appearing to oppose its application, nor if any one does appear in opposition is he obliged to prove the negative and convince the board that public convenience and necessity do not require the construction of the road.

The burden of proof is upon the corporation to establish the performance by it of the requirements of the law and to establish the existence of that condition of affairs which will authorize the State authorities to grant a franchise authorizing the corporation to operate its road in the locality proposed. It must prove its claim for a franchise under the laws, the same as any person who attempts to establish any other claim or right.

The determination of the Board of Railroad Commissioners as to whether it will grant the certificate of public convenience and necessity under section 59 of chapter 676 of the Laws of 1892, is necessarily a matter of discretion, not an arbitrary discretion, but a discretion enlightened and guided by its experience in the affairs of railroads, the problems of transportation and the needs of the people, together with the special facts brought before it in each particular case. To guide it, where it is claimed that existing roads do not afford the necessary facilities, the commissioners may properly take into consideration the means that the law affords to regulate the management of railroad corporations and to correct mismanagement and enforce the providing of proper service.

The fact that a railroad company charged exorbitant rates for freight and passenger traffic does not make out a case for the building of a practically parallel road; such charges may indicate either that there is insufficient business to support the road with lesser charges, or it may indicate bad management and a grasping disposition on the part of the operators of the road. The remedy in the latter case is to apply to the Board of Railroad Commissioners for a reduction of the rates, pursuant to section 161 of chapter 565 of the Laws of 1890.

It will be assumed by the General Term of the Supreme Court that the Board of Railroad Commissioners will do its duty, and that the Attorney-General of the State of New York will perform the duty devolved upon him by law.

APPLICATION by the Amsterdam, Johnstown and Gloversville Railroad Company to the General Term of the Supreme Court for the certificate provided by section 59 of chapter 676 of the Laws of 1892, upon a certified copy of all maps and papers on file in the office of the Board of Railroad Commissioners of the State of New

York, in the matter of the application of said railroad company for such certificate, said Board of Railroad Commissioners having, by an order made at the capitol, in the city of Albany, on the 20th day of November, 1894, denied the application of said railroad company for such certificate.

*Matthew Hale* and *Andrew J. Nellis*, for the petitioner.

*Hamilton Harris* and *A. D. L. Baker*, for property owners and others, in opposition.

HERRICK, J. :

The Amsterdam, Johnstown and Gloversville Railroad Company was incorporated July 12, 1894, pursuant to chapter 565 of the Laws of 1890, and the laws amendatory thereof, for the purpose of constructing a steam railway between Amsterdam, Montgomery county, and Johnstown and Gloversville, Fulton county, a distance of about fourteen miles.

The company has paid to the State Treasurer the taxes upon the capital stock as required by statute.

Section 59 of chapter 676 of the Laws of 1892 provides that " No railroad corporation hereafter formed under the laws of this State shall exercise the powers conferred by law upon such corporations, or begin the construction of its road, until the directors shall cause a copy of the articles of association to be published in one or more newspapers in each county in which the road is proposed to be located, at least once a week for three successive weeks, and shall file satisfactory proof thereof with the Board of Railroad Commissioners, nor until the Board of Railroad Commissioners shall certify that the foregoing conditions have been complied with, and also *that public convenience and necessity require the construction of said railroad as proposed in said articles of association.* * * * After a refusal to grant such certificate, the board shall certify a copy of all maps and papers on file in its office, and of the findings of the board when so requested by the directors aforesaid. Such directors may thereupon present the same to a General Term of the Supreme Court of the department within which said road is proposed in whole or in part to be constructed, and said General Term shall have power, in its discretion, to order said board, for reasons stated, to issue said certificate, and it shall be issued accordingly."

The corporation so formed complied with the necessary preliminary requirements of this statute, and made application to the Board of Railroad Commissioners for a certificate "that public convenience and necessity require the construction of said railroad."

The said Board of Railroad Commissioners, holding that it did not appear to the board that "public convenience and necessity" required the construction of said road as proposed in said articles of association "and as set forth on the maps and profiles filed," denied the application for such certificate.

Whereupon, the directors of said railroad corporation procured certified copies of all maps, papers and evidence presented on said application, and have presented the same to this court, and ask for an order to compel the Board of Railroad Commissioners to issue the certificate applied for.

In *The Matter of the New Hamburgh Railroad* (76 Hun, 76), where a similar application was made to the General Term of the Supreme Court, after stating the manner in which the application was brought before it under the statute, the court said : "This mode of proceeding, while it grants the court power to review the action of the commissioners, plainly indicates that the court is to treat the application as in the nature of a review of the decision of a subordinate tribunal, and not as it would an original application made to it in the first instance. The burden rests upon the petitioner to show affirmatively that the commissioners erred in their determination, and the commissioners should be credited with some technical knowledge which this court is not presumed to possess."

I concur with that view of the province of this court in these proceedings. Unless the court can see that the decision of the Board of Railroad Commissioners was founded upon erroneous legal principles, or that it proceeded contrary to the clear weight of evidence in arriving at its conclusion upon any question of fact, or that it has abused the discretion vested in it, and has arbitrarily refused to issue the necessary certificate, I do not think that the court should reverse its determination and compel it to issue a certificate.

The Railroad Commissioners are vested with the supervision of the railroads of the State ; it is made their special and peculiar duty to investigate and inform themselves as to the condition of existing roads, and as to the needs of the various parts of the State for

transportation facilities; and their opinion upon these matters, in regard to which a proper discharge of their official duty requires them to be specially informed, is entitled to respect and consideration.

Upon the hearing before the Railroad Commission oral testimony was given by witnesses sworn both on behalf of and in opposition to the application. Petitions signed by hundreds of the residents of Amsterdam, Gloversville and Johnstown were presented to, and filed with, such Board of Railroad Commissioners.

Some of the petitioners certify that public convenience and necessity require the construction of the proposed road, and others certify that public convenience and necessity do not require the construction of the proposed road.

The Board of Railroad Commissioners, in making its order denying the application, filed a memorandum, which, amongst other things, contains the following statement: "In the pending application the route of the proposed road from Akin, a small settlement about three miles west of the Amsterdam station on the New York Central, westerly for about three miles to Tribes Hill, on a line substantially parallel with the line of the Central and lying a few hundred feet north of it. There are stations on the New York Central at both Akin and Tribes Hill. From Tribes Hill the proposed line runs northwesterly on a course gradually diverging from the line of the Central, passing at the most distant point, within from two to two and one-half miles of the Fonda station of the Central, which station is some five miles west of the Tribes Hill station on the Central. The proposed line then turns northerly and runs to Johnstown on a course in the immediate neighborhood of and parallel to the lines of the Cayadutta Electric Railroad and the Fonda, Johnstown and Gloversville Railroad, and in fact crossing these roads in several places.

"From Johnstown to Gloversville it follows practically a route already occupied by three existing railroads, viz., the two just mentioned and the Johnstown, Gloversville & Kingsboro Horse Railroad. Considered as a whole it offers a route from Akin to Gloversville of fourteen miles in length, as against an existing route of about sixteen miles by the New York Central to Fonda, and from thence to Gloversville by the Cayadutta Electric road; and a second route of about twenty-one miles by the Central to Fonda and the

Fonda, Johnstown & Gloversville.   Conceding that the new road
may make a saving of a few miles this saving is of no consequence
except for passenger traffic.   The only manner in which the pro-
posed road would reach the city of Amsterdam would be by a con-
nection with an existing electric street railroad now running to
Akin, which from Akin to Amsterdam parallels and is adjacent to
to the New York Central.   The proposed road does not touch any
community or inhabited region not now amply supplied with rail-
road facilities.   The evidence is undisputed that the existing roads
are abundantly able to transact all business now offered or that is
likely to be offered for many years to come.   If the charges made for
transacting such business are exorbitant, there is a better method for
curing this evil than by inviting superfluous competition.   Further-
more,  if the existing roads between Fonda and Gloversville are
making exorbitant charges, this fact may indicate that there is
hardly business enough to support them upon reasonable charges,
in which case there is obviously no occasion to build another
road in a neighborhood already oversupplied.

" The board is of the opinion and finds that ' public convenience
and necessity do not require the construction of said railroad.' "

The testimony offered and produced, not only oral, but that con-
tained in the petitions filed, seems to have been confined almost
entirely to expressions of opinion that " public convenience and
necessity " require the construction of the road in question without
giving any facts upon which such opinion is based, excepting the
alleged fact that one of the present railroads, and the principal one,
which the Board of Railroad Commissioners finds the proposed road
will practically parallel, is making excessive charges for freight and
passenger transportation.

Petitions presenting no facts, nor the evidence thereof, but simply
expressing the opinions and desires of the petitioners, are not evi-
dence, and cannot take the place of evidence.   Local sentiment,
aroused by the alleged misuse or abuse of an existing franchise,
affords no sufficient reason for granting another franchise, upon the
ground that public convenience and necessity require the construction
of-another road.

No evidence was given to show that the amount of passenger
traffic or freight traffic is so great as to require an additional road

THIRD DEPARTMENT, MAY TERM, 1895.          [Vol. 86.

for its accommodation; and I think the evidence before the commissioners abundantly justifies their statement that "The evidence is undisputed that the existing roads are abundantly able to transact all business now offered, or that is likely to be offered for many years to come."

The privilege of constructing and operating a railroad is not one that exists in the incorporators as a common right; it is a privilege or franchise that is granted by the State; and can only be obtained by complying with the laws adopted by the State regulating the granting of such franchises.

Prior to the enactment of section 59 of chapter 676 of the Laws of 1892, it was within the power of fifteen or more citizens to form a railroad corporation, and to lay its tracks through any section, upon securing from the property owners the necessary right of way.

This section effected a change. It was evidently intended to restrict the building of roads not actually needed, in order to protect not only existing railroads, but also citizens from investing in alluring but profitless enterprises.

The propriety and necessity of constructing a road was not left to be determined by enterprising, but perhaps ill-informed or ill-advised citizens, or by those seeking by threats of destructive competition to levy tribute upon existing roads, but was placed in the hands of accredited officers of the State, who should act for, and in its behalf, in determining whether the interests of the State, or of the community immediately affected, would be promoted by the building of a road.

Provisions had theretofore been made, to be hereafter referred to, for the correction of abuses in the management of roads already constructed, so that it was no longer necessary to correct evils in the management of existing roads by constructing competing ones.

And before a new corporation can construct a road the corporation must secure from the Railroad Commissioners their certificate, "that public convenience and necessity require the construction of said railroad."

The corporation applying for such a certificate necessarily holds the affirmative upon that question; it devolves upon it to show that its construction is required by public convenience and necessity.

The certificate does not issue to it simply upon its filing its

application, as a matter of right, unless evidence is produced before the board to show that public convenience and necessity do not require its construction. It is not entitled to it as a matter of right in the event of no one appearing to oppose its application; nor if any one does appear in opposition is he obliged to prove a negative and convince the board that public convenience and necessity do not require the construction of the road.

The burden of proof is upon it to establish the performance by it of the requirements of the law and to establish the existence of that condition of affairs which will authorize the State authorities to grant a franchise, authorizing it to operate its road in the locality proposed.

It is applying for something from the State, and it must prove its claim to it under the laws the same as any person who attempts to establish any other claim or right.

So, also, in applying to this court the burden is upon the applicants to show to us affirmatively that the Railroad Commissioners have erred in their refusal to grant the necessary certificate.

Their determination as to whether they will grant a certificate of public convenience and necessity is necessarily and properly largely a matter of discretion, not an arbitrary discretion, but a discretion enlightened and guided by their experience in the affairs of railroads, the problems of transportation, the needs of the people, together with the special facts brought before them in each particular case. To guide them, where it is claimed existing roads do not afford the necessary facilities, the commissioners may properly take into consideration the means that the law affords to regulate the management of railroad corporations and correct mismanagement and enforce the providing of proper service.

From an examination of the records in this case it seems to me that the Railroad Commissioners were abundantly justified in finding that it did not appear that "public convenience and necessity" require the construction of the said railroad "as proposed in said articles of association and as set forth on the maps and profiles filed," and that they have not abused their discretion, nor can I say that they erred in its exercise.

As I have before stated, the opinions of the witnesses sworn in behalf of the application, and the certificates of the petitioners, residents in Amsterdam, Gloversville and Johnstown, certifying

that public convenience and necessity required the construction of the road, are almost entirely based upon the alleged exorbitant charges of the existing railroads and their belief that rates of passenger and freight traffic will be lessened by the construction of the applicant's road.

In the memorandum of the Railroad Commissioners before referred to it is stated that if the existing roads are exorbitant in their charges " this fact may indicate that there is hardly business enough to support them upon reasonable charges, in which case there is obviously no occasion to build another road in a neighborhood already over supplied."

But it is claimed that the principal company already in existence has recently declared a dividend of eight per cent, and has in addition a surplus in its treasury, and that those facts show that there is no necessity for charging the present rates.

Without inquiring into the truth of such claims nor for how long a time the existing company has been running and declaring dividends upon its stock, or whether the original investors have from the time of the commencement of their road down to the present time received reasonable returns for their investments, but for the purposes of this case, assuming that their charges are, under all the circumstances, unreasonable, I think that the Railroad Commissioners did not err in holding that that was not a sufficient reason for certifying that public convenience and necessity required the construction of the road.

Where there is no railroad in existence in a locality, or when the traffic is so great as not to be properly cared for by one road, or even where there is traffic sufficient to adequately support more than one road, we may say that public convenience and necessity require the construction of another. But where, as in this case, it appears that " existing roads are abundantly able to transact all business now offered or that is likely to be offered for many years to come," I do not see how it can be said that public convenience and necessity require the construction of another.

The charging of exorbitant rates does not, in the present state of law, make a case for the building of another road.

Such charges may indicate either that there is insufficient business to support the roads with lesser charges or it may indicate bad management and a grasping disposition on the part of their operators.

There is no pretense that there is too much business for the capacity of the existing railroads, and the remedy for the present high charges, if they are unnecessarily high, is not by building an opposition road which may cripple those already in existence and destroy the value of the investments in them or lead to the purchasing of the new road by the old companies, but, as indicated in the memorandum of the Railroad Commission, the remedy is to apply for a reduction of the rates.

It is provided by section 161 of chapter 565 of the Laws of 1890, that if, in the judgment of the Board of Railroad Commissioners, after a careful personal examination of the same, it shall appear "that any change of the rates of fare for transporting freight or passengers * * * is reasonable and expedient in order to promote the security, convenience and accommodation of the public, the board shall give notice and information in writing to the corporation of the * * * changes which they deem to be proper, and shall give such corporation an opportunity for a full hearing thereof, and if the corporation refuses or neglects to make such * * * changes * * * the board shall present the facts in the case to the Attorney-General for his consideration and action, and shall also report them in its annual or in a special report to the Legislature." Section 162, as amended by chapter 676 of the Laws of 1892, provides that a Special Term of the Supreme Court shall have power "in its discretion in all cases of decisions and recommendations by the board, which are just and reasonable, to compel compliance therewith by mandamus, subject to appeal to the General Term and the Court of Appeals, and upon such appeal the General Term and the Court of Appeals may review and reverse upon the facts as well as the law."

These provisions of the statute, together with others which I have not quoted, seem to me to afford a remedy for the alleged grievances against the existing roads.

If an application had been made to the Railroad Commissioners to compel a reduction of the rates, and it had been made clearly to appear that they were exorbitant, and notwithstanding that fact the commissioners had refused to recommend the needed relief, so that the only relief attainable was by building another road, the case would appear before us in a different aspect.

THIRD DEPARTMENT, MAY TERM, 1895.          [Vol. 86.

The court must assume, however, that the Railroad Commission will do its duty in the premises, and upon its being made to appear to it that the existing railroads are charging unnecessarily high rates for transportation, that it will recommend their reduction. And it must also be assumed that the Attorney-General will do his duty and present their recommendation to the court, in the event of the railroads refusing to comply with the recommendation of the Railroad Commission, and upon its being so presented, the court will endeavor to do its duty in the premises.

The only substantial reason, therefore, given for the opinion that public convenience and necessity require the construction of the applicant's road, being the alleged excessive charges of the existing railroads for freight and passenger transportation, and there being a remedy provided for that by existing laws, it seems to me that the Railroad Commissioners were correct in declining to issue the certificate in question, and that there is no reason either upon the facts or from their construction of the law, for reversing their determination and compelling them to issue the certificate.

. The application should, therefore, be denied, with the costs and disbursements in this court.

PUTNAM, J., concurred; STOVER, J., not acting.

Application denied, with costs and disbursements in this court.