(14 Misc. Rep. 491.)

## McWILLIAMS v. JEWETT, Mayor, et al.

(Supreme Court, Special Term, Erie County. November, 1895.)

STREET RAILROADS—CONSTRUCTION—CERTIFICATE OF NECESSITY.

Where a street-railway company has, pursuant to Laws 1892, c. 676, §§ 91, 92, applied to the local authorities of a city for their consent to the use of its streets, the authorities will not be enjoined from publishing the required notice of a public hearing before the common council on the question of such consent because the company has not obtained the certificate required by section 59 of the railroad act, providing that no railroad company shall exercise the powers conferred on such corporations till it has obtained the certificate of the board of railroad commissioners as to the public convenience and necessity of its road.

Action by Esther McWilliams against Edgar B. Jewett, as mayor of Buffalo, and others, to enjoin defendants from advertising notice of a public meeting on the question of allowing the streets of Buffalo to be used by a railroad company. A temporary injunction was granted, and plaintiff moves to make the same permanent. Denied.

John G. Milburn, for plaintiff.
Frank C. Laughlin and Spencer Clinton, for defendants.

SPRING, J. The plaintiff is the owner of a house and lot on Linwood avenue, one of the principal residential streets of the city of Buffalo. The Buffalo Traction Company is a railroad corporation, recently organized, with a view of constructing a street-surface railroad in that city, and its projected line indicates the use of this avenue in front of the premises of plaintiff in the construction and operation of its road. This company, in pursuance of sections 91 and 92 of the railroad law,[1] has applied to the local authorities for their consent to use the streets of the city in the building and maintenance of its line; and the defendants, in their official capacity, were about to commence the publication of the required notice for the public hearing before the common council of the city, which was fixed for November 30th, when the temporary injunction was granted in this action restraining its promulgation. It appearing that, unless publication was commenced promptly, the 14 days prescribed by statute for the publishing of the notice would not intervene the hearing of the motion to make the injunction order permanent and the designated date for the public meeting, the order was

---

[1] Laws 1892, c. 676.

accordingly modified permitting the publication to be made, and the date for the hearing of the motion was changed to a week earlier. By this course, if the injunction was vacated, the public meeting could be had at the date fixed, and, if sustained, the publication could be discontinued, and thus no injury accrue to any one.

The certificate of the board of railroad commissioners, "that public convenience and a necessity require the construction of said railroad as proposed in said articles of association" (section 59 of the railroad law) has not yet been obtained. The contention of the counsel for plaintiff is that the action of the defendants in advertising for a public meeting is premature; that this certificate of the commissioners must antedate any attempt to obtain the consent of the local authorities to the building of its road. The section mentioned provides that "no railroad corporation hereafter formed under the laws of this state shall exercise the powers conferred by law upon such corporations, or begin the construction of its road," until the certificate of the board of railroad commissioners as to the public convenience and a necessity for its building has been obtained. Is the action of the defendants in their endeavor to ascertain the trend of public sentiment as to the wisdom and feasibility of constructing this road in the city within the inhibition of section 59? Section 2 of article 1 of this chapter prescribes the requirements for the formation of a railroad corporation. These requirements have been complied with, and the traction company is a railroad corporation equipped with a board of directors, and permitted to exercise the functions of its corporate powers, except as they are within the restrictions of the section quoted. Even if the board of railroad commissioners refuse to grant the requisite certificate, the corporation does not thereby become functus officio. It has the privilege, after the expiration of one year, to renew its application for the certificate, and during the interim it continues to be a corporation. It can sue and be sued. If any other corporation should usurp its name, it could invoke the aid of the courts to restrain this invasion of its franchise. It is liable to assessment, and amenable to the state as other corporations are. It can elect directors, and carry on the functions incident to its corporate life. In fact, every other power, except such as are prohibited by section 59 aforesaid, can be exercised by a railroad corporation, irrespective of the approval of the state board. That section unequivocally restrains the corporation from the construction of its contemplated road unless the fiat of the board of railroad commissioners has been given as the warrant for so doing. It also prescribes that the corporation shall not exercise the powers conferred by law upon such railroad corporation until the certificate has been obtained. What is the significance of that restriction? Clearly not of the powers incident to all corporations, for the inhibition only pertains to those conferred by law upon railroad corporations. What are these? The chapter itself clearly defines these additional powers applicable only to railroad corporations. Section 4 of article 2 provides as follows: "Additional Powers Conferred.—Subject to the limitations and requirements of this chapter, every railroad corporation, in addition

to the powers given by the general and stock corporation laws, shall have powers." Then in the succeeding subdivisions of this section are specifically set forth these additional powers, and they are to enter upon lands for the purposes of survey, the acquisition of land, the construction of the road, the intersection of streams, other railroads, etc., the building of stations, the transportation of persons and property, and the time and manner of so doing, and the purchase of lands, etc., in other states, and to borrow money for the completion of its road. These additional powers all pertain to the actual construction of the road, and signify the performance of physical acts from which injuries may flow directly to the property owners and persons interested. These are the powers "conferred by law" upon railroad corporations which, in common with the construction of the road, are prohibited until the certificate has been granted by the state board. Section 59 specially exempts from this prohibition the making of examinations and surveys essential to the selection of the most advantageous route. This is a significant circumstance, indicating that the legislative intent in restricting the execution of corporate powers was only to apply to the additional privileges specifically enumerated in the very chapter in which the interdiction is contained. The purpose of requiring the certificate of the state commissioners before the road can be constructed was to prevent the building of unnecessary railroads, and to vest in some tribunal the authority to determine as to the wisdom of constructing a railroad in any given case. The incipient stages preceding the actual construction of the road were not designed to be prohibited. They involved no invasion of property rights. Had the legislature intended to restrain these preliminary acts, it would have made the formation of every railroad corporation dependent upon the approval of the board of railroad commissioners. A completed corporation, with a map of the proposed route, is presented to this board, and that body then determines as to the necessity and public convenience of the contemplated road; but the act does not require the corporation to be absolutely quiescent during the pendency of the proceedings for the certificate, but only as to the acts in section 4, which the legislature evidently intended to await the action of the state board.

Section 59, referred to, originally exempted from its operation street-surface railroads, but by an amendment at the last session of the legislature this exemption was stricken from the section, so that such railroads are within its purview. Article 4 of the railroad law is devoted to street-surface railroads, and there are certain initial proceedings required peculiar to roads of that kind. The consent of property owners bounded on the street on which it is proposed to build the road, and of the local authorities of the city, must be obtained before the construction of the road. There is no requirement that these consents are conditions precedent to the granting of the certificate, and none preventing the corporation from attempting to get them before it has obtained such certificate. The pith and scope of the requirement are that the consents must precede the construction of the road.

The board of railroad commissioners is a tribunal vested with discretionary power in its determination of the necessity and public convenience of a railroad. In re Amsterdam, J. & G. R. Co., 86 Hun, 578, 33 N. Y. Supp. 1009. Its functions are like those of a court, without the strict rules of evidence governing the latter. In ascertaining as to the wisdom and propriety of granting a certificate to a street-surface railroad corporation the controlling purpose must be to meet the demands of the locality in which the proposed line is to be built. Public sentiment in the city would be a monitor heeded largely by this tribunal. So it may well be urged that the meeting sought to be convened by the municipal authorities to give a public hearing to those interested for or against the contemplated line would furnish valuable information for the guidance both of the common council and of the board of railroad commissioners. If public sentiment is positive and definite in either direction, if the common council grant the consent with substantial unanimity, if the consent is contrary to the will of the people of the city as evinced in the meeting, these considerations would have weight with the board in passing upon the propriety of certifying to the necessity and public convenience of the road. None of these acts are of that physical concrete kind from which damages can result to the property owners, the value of whose property may be affected by the construction of the road. Endeavors to ascertain and execute public sentiment are imbedded in the fiber of a republican form of government. The fullest measure of efficient public executive service is found in meeting inflexibly the will of the people, and the nearer the state or municipal authorities can get to that genuine public sentiment the more efficacious will be their administration of affairs. Any act which has for its object the enlightenment of a public body on the proposition it has under advisement should be encouraged, not restrained. In amending section 59 to make it embrace street-surface railroad corporations, the legislature left the restriction upon the exercise of corporate powers unchanged. If I am correct in holding that this interdiction applies only to the additional powers conferred upon railroad corporations, then certainly it cannot be construed to forbid the publication of this notice. Had the legislature designed to extend still further this restriction, it would have so stated in extending the act to street railroads. It would not leave the scope of the act so that the restriction plainly applied only to the additional powers enumerated, and yet, without change of phraseology, make it applicable to provisions peculiar to street railroads, and which are preliminary in their import. I have very grave doubts as to the right of plaintiff to an injunction in this case, even assuming I am wrong in the construction of the statute. The drastic restraint of an injunction is permissible where damage is likely to ensue from the performance of the acts complained of, and where no adequate redress at law is obtainable. But, where irreparable injury is alleged, the damages must not be uncertain and speculative, but real and substantial. Troy & B. R. Co. v. Boston, H. T. & W. Ry. Co., 86 N. Y. 107, 122; Thomas v. Union, 121 N. Y. 45–57, 24 N. E. 24.

To say publication of a notice of a public meeting will irreparably injure the property of the plaintiff is hardly within the province of the damages which the courts are expected to make the basis of their interference by injunction. The traction company is not a party to this action. The mayor and clerk are the officials restrained, and their offense consists in attempting to invite the plaintiff with others to enlighten them as to the advisability of consenting to the appropriation of parts of certain streets in constructing this road, and I question whether that act is of sufficient gravity in its bearing upon property rights to justify an injunction. However, I prefer to base my denial of plaintiff's application upon the broader ground that the certificate is not a necessary preliminary to the application for the public meeting, and the publication of the notice in pursuance thereof. The motion is denied, with $10 costs.

Motion denied, with $10 costs.