PEOPLE ex rel. LOUGHRAN et al. v. BOARD OF RAILROAD COM'RS OF STATE OF NEW YORK.

(Supreme Court, Appellate Division, Third Department.   July 6, 1898.)

1. RAILROAD COMMISSIONERS—POWERS.

Laws 1890, c. 565 (Laws 1892, c. 676) § 34, provides that no railroad station shall be discontinued without the consent of the board of railroad commissioners, and section 157 provides that the board shall have power to administer oaths in the discharge of its duties and have general super-vision of railroads, and examine them, and keep informed as to their condition, manner of operation, and compliance with the provisions of their charters and of law. *Held*, that the board has no power to interpret or enforce a contract between a railroad company and the citizens of a town for the maintenance of a station.

2. RAILROADS—DEPOTS.

In a city of less than 25,000 inhabitants, a railroad company that maintained two stations therein, besides a union station, was permitted by the railroad commissioners to discontinue one of its stations, which was within a mile of the union station. *Held*, that the action of the commissioners was not erroneous.

Certiorari by the state, on the relation of Robert Loughran and others, to review the action of the board of railroad commissioners. Action of the board confirmed.

In the year 1881 certain citizens of the city of Kingston, N. Y., entered into an agreement with Hon. Thomas Cornell, the president of the Ulster & Delaware Railroad Company, by which the latter agreed that, if such citizens would raise a sufficient sum of money, purchase a lot, and erect a station house at a point near the head of Fair street, in said city, said Cornell would cause the trains of said railroad company to stop at such depot for passenger purposes. Thereupon a subscription paper reciting such agreement was drawn up, which was subscribed by numerous citizens, and the sum of $3,345, being realized, was expended in extending Fair street to the point agreed upon, purchasing a lot, and erecting a station house thereon. The deed of such lot was taken to the railroad company, but contained the following clause: "This description being designed and intended to give fifty feet additional width to said railroad lands for the purpose of a depot building and grounds, and, when it ceases to be used as such, it is to revert to the party of the first part." At a meeting of stockholders of said railroad company held on June 14, 1882, the following resolution was passed: "On motion, the action of the officers and directors of the Ulster & Delaware Railroad Company for the preceding year was approved, ratified, and confirmed." A like resolution was passed in each of the years 1883 and 1884. The agreement actually made

between Mr. Cornell and the citizens of Kingston, in 1881, in relation to the Fair street station, was recited in the subscription paper referred to as follows: "Whereas, the Hon. Thomas Cornell, president of the Ulster & Delaware Railroad Company, has assured a committee that, if the people would erect a depot building at the foot of Voorhee's lane, or at a point near the head of Fair street, he would cause the trains of said road to stop at said depot for passenger purposes, in consideration thereof we, the undersigned, do hereby agree to pay the sums set opposite our names," etc. Under said agreement, the passenger trains of the railroad company were stopped at the Fair street station for 15 years. In 1897, the company proposing to discontinue the use of said station, the relators, residents and freeholders of the city of Kingston, acting for themselves and as a committee of citizens of Kingston similarly situated, presented to the board of railroad commissioners a petition asking for an order prohibiting the Ulster & Delaware Railroad Company from discontinuing the Fair street station; whereupon the said railroad company interposed an answer to said petition, and also filed its petition to said board asking for its consent to an abandonment of said station, to which latter petition the relators served an answer. A hearing was thereafter had on the questions raised by the said petitions and the answers thereto, both applications being heard as one proceeding. The board granted its consent to the discontinuance of said station; and thereupon the relators sued out a writ of certiorari to review the action of said board. The city of Kingston, in 1897, contained about 25,000 inhabitants. Subsequent to the year 1881 the West Shore Railroad Company was constructed, crossing the tracks of the Ulster & Delaware Railroad Company, in the city of Kingston, about a mile east of the Fair street station, and at that place was established a union depot, used by the said two railroad companies, and also by the Walkill Valley Railroad Company, whose track extended to that point. There is also another depot at Rondout, in the south part of the city of Kingston, so that, the Fair street station being discontinued, there remain two stations at which the trains of the Ulster & Delaware Railroad Company stop in said city.

Argued before PARKER, P. J., and LANDON, HERRICK, PUTNAM, and MERWIN, JJ.

John J. Linson, for appellants.

Theodore E. Hancock, James A. McCormick, and Lewis E. Carr, for respondent.

PUTNAM, J. It is urged by the learned counsel for the relators that the contract entered into in 1881 between citizens of the city of Kingston and the Honorable Thomas Cornell, then president of the Ulster & Delaware Railroad Company, was clearly proved, undisputed, valid, and in force in 1897, and hence that the consent of the railroad commissioners that the Fair street station might be discontinued, in violation of the provisions of said contract, was improperly given. It will be observed that the contract in question contains no provision as to how long it should continue in force; and the deed of the lot on which the station was erected contains a clause that the conveyance was made "for the purpose of a depot building and grounds, and, when it ceased to be used as such, it is to revert to the party of the first part."

It is certainly questionable whether, under the agreement, the railroad company was compelled to continue the use of the depot in question perpetually, and whether its use for the period of 15 years was not a performance of the contract. In Railway Co. v. Marshall, 136 U. S. 393, 10 Sup. Ct. 846, it appeared that the city of Marshall had agreed to give to the Texas & Pacific Railway Company $300,000 in

county bonds, and 66 acres of land, in consideration of the agreement of the company to "permanently" establish its eastern terminus and Texas office in said city, and to construct therein the main machine shops and car works of the company. Notwithstanding the word "permanently," used in the contract between the railroad company and the city, it was held that the covenant on the part of the company was performed when it had established a depot and office and operated car works and machine shops in the city, and kept them going for eight years. It was determined that the word "permanently" did not mean forever, or lasting forever. In the contract relied upon by the relators the word "permanently" was not used. Nothing therein contained indicated how long the contract was intended to remain in force, or that the parties expected it to continue operative after the lapse of 15 years under changed circumstances and conditions. In the case cited, it was said of the contract there considered:

"It did not amount to a covenant that the company would never cease to make its eastern terminus at Marshall; that it would forever keep up the depot at that place; that it would for all time continue to have its machine shops and car shops there; and that whatever might be the changes of time and circumstances, of railroad rivalry and assistance, these things alone should remain forever unchangeable. Such a contract, while we do not say that it would be void on the ground of public policy, is undoubtedly so far objectionable as obstructing improvements and changes which might be for the public interest, and is so far a hindrance in the way of what might be necessary for the advantage of the railroad itself and of the community which enjoyed its benefits, that we must look the whole contract over critically before we decide that it bears such an imperative and such a remarkable meaning."

The language quoted was applied to a contract wherein the railroad corporation had agreed to "permanently" establish its eastern terminus in the city of Marshall. In the contract under consideration the word "permanently" was not used, and there was no covenant as to how long it should continue in force. It is certainly doubtful whether the Ulster & Delaware Railroad Company, in 1897, having for 15 years complied with its covenant contained in such contract, was compelled to continue the use of the Fair street station.

Again, however the contract may be construed, it is questionable whether, under all the facts and circumstances shown, the case is one in which a performance should be enforced. See Railway Co. v. Marshall, 136 U. S. 405, 10 Sup. Ct. 846; Conger v. Railroad Co., 120 N. Y. 29, 23 N. E. 983. In the case last cited it was held that the enforcement of specific performance of a contract is discretionary, and performance will not be decreed where it will result in great hardship to one party without any considerable benefit to the other, or in cases where the public interests would be prejudiced thereby. Whether this is a case where specific performance, under well-settled principles, should be awarded to the relators, depended upon questions of fact and law, upon which different views might be entertained.

The relators, therefore, asking the board of railroad commissioners to determine the validity and to enforce the performance of the contract of 1881, the questions sought to be raised were: Was the contract made by Mr. Cornell and certain citizens of the city of Kingston

a valid and subsisting one? Did it bind the corporation to stop the trains at the Fair street station perpetually, or was it performed by the observance of the agreement by the company for 15 years? And, under the facts and circumstances shown, were the relators entitled to enforce a performance thereof?

We are of the opinion that we are not called upon to determine those questions on this appeal. They could properly be tried in an action in the supreme court brought by the relators, or those they represent, against the Ulster & Delaware Railroad Company, to enforce the performance of the contract under which they claim, in such an action as that of Conger v. Railroad Co., supra. In such an action the parties could interpose proper pleadings. If questions of fact arose, a jury could be called to try them. Exceptions could be taken to the rulings of the trial court, and, at the conclusion of the trial, a proper judgment entered, which might be reviewed on appeal. We are unable to find any provisions in the railroad law (chapter 565, Laws 1890; chapter 676, Laws 1892) authorizing the board of railroad commissioners to pass on the force and effect of the contract made between the Ulster & Delaware Railroad Company and certain citizens of Kingston in regard to the location of the depot at Fair street, or to enforce a performance of such contract. Section 34 of the act provides:

"No station established by any railroad corporation for the reception or delivery of passengers or property, or both, shall be discontinued without the consent of the board of railroad commissioners first had and obtained."

And section 157, that:

"The board shall have power to administer oaths in all matters relating to its duties, so far as necessary to enable it to discharge such duties, shall have general supervision of all railroads, and shall examine the same and keep informed as to their condition, and the manner in which they are operated for the security and accommodation of the public and their compliance with the provisions of their charters and of law."

Neither of the provisions of the act above quoted, or any others contained therein, where there are disputed questions arising between railroad companies and third persons, under contracts, authorizes the board of railroad commissioners to bring into proceedings pending before them, relating to the discontinuance of a station, such other parties, and to determine their rights. In giving consent to the discontinuance of a station, under the provisions of section 34, supra, the commissioners act for the state. The proceeding is one between them and the railway corporation only. A consent may be granted under the act after a personal inspection of the road by the commissioners, and without notice to any other party. It is true the board may take evidence; may hear the objections of those opposed to a change of a station; may go through the form of a trial; but such procedure and trial is for the purpose of satisfying the commissioners. The railroad law does not contemplate, on a question of a discontinuance of a station, its bringing in, as parties to proceedings before it, third parties, between whom and a railroad company disputes exist as to their respective rights under contracts. As said in State v. New Haven & N. Co., 43 Conn. 351-382:

"But it is not their duty, and they have no power, to ascertain and determine the rights and enforce the relative duties of contending parties. Their whole power, and consequently their whole duty, in respect to the matter now under consideration, was to give or withhold their consent to the proposition of the railroad company. Their duties are not to enforce rights and redress wrongs, as a court of justice, but to stand, in place of the legislature, between corporations and the public, and supervise the exercise of corporate powers, so that no injustice may be done. The legislature might, and for a considerable period of time did, discharge these duties itself; but as railroads became more numerous, and complaints more frequent, the power was wisely delegated to a convenient board, that could act promptly and with advantage to all concerned."

The same remarks apply to the provisions of section 157 of the act. The power therein conferred upon the board of railroad commissioners to enforce compliance by railroad companies with the provisions of their charter and of law does not empower it to act as a court of equity, and determine the force and effect of contracts made between railroad companies and third parties, and to enforce performance of such contracts. All that the board of railroad commissioners was called upon to do on the application of the Ulster & Delaware Railroad Company to discontinue Fair street station was to give or withhold its consent. It was called upon to determine whether, as between the railroad company and the general public, a consent should be given. If the plaintiffs, or those they represent, have a subsisting contract by which the Ulster & Delaware Railroad Company is obliged to continue the use of the Fair street station, they are not prevented from enforcing its covenants by the action of the defendant. The consent of the latter was an act on behalf of the state, by them represented, and did not determine questions arising under a contract between the railroad company and the relators, or those they represent. We are of the opinion that the defendant was not called upon to determine the force and validity of the contract in question.

The board not being compelled, as between citizens of Kingston and the Ulster & Delaware Railroad Company, to determine the respective rights of the parties under the contract of 1881, or enforce a performance thereof, the question arises whether or not any error was committed by the defendant, in giving its consent to the discontinuance of the Fair street station, which this court can or should review. It is urged by the relators that the board, in hearing the proofs and allegations of the respective parties in relation to the discontinuance of the station in question, and in determining the issue raised in favor of the railroad company, exercised judicial functions, and hence that its action may be reviewed on certiorari. On the other hand, it is claimed that the functions of the board of railroad commissioners, under the railroad law, are administrative and ministerial, and not judicial, and hence defendant's action in granting leave to the railroad company to discontinue the use of the station cannot be reviewed by this court. We do not determine the question thus raised. Assuming, then, we have the power claimed by appellants, and after a careful consideration of the facts and circumstances of this case, we are unable to say that the defendant erred in granting the prayer of the Ulster & Delaware Railroad Company to discon-

tinue the use of Fair street station. As said by Herrick, J., in Re Amsterdam, J. & G. R. Co., 86 Hun, 578–581, 33 N. Y. Supp. 1009, 1010:

"The railroad commissioners are vested with the supervision of the railroads of the state. It is made their special and peculiar duty to investigate and inform themselves as to the condition of existing roads, and as to the needs of the various parts of the state for transportation facilities; and their opinion upon these matters, in regard to which a proper discharge of their official duty requires them to be specially informed, is entitled to respect and consideration."

We should also remember that the members of the board of railroad commissioners, before passing upon the question submitted to them, had the benefit of a personal inspection of the line of the railroad, of the existing depots, and of the city of Kingston; that this personal inspection of the locality had perhaps as much force on the minds of the commissioners as the evidence produced before them; and that this court cannot have the benefit of a personal view of the locality. Under such circumstances,—if we may, in this proceeding, review the action of the defendant, as judicial in its character,—to justify a reversal, the relators are required to satisfy us with reasonable certainty that the defendant committed an error in its determination. In its memorandum the board stated:

"In the hearing of this case the board took a large amount of testimony, and made official personal examination on several occasions of the location and general situation relating to the Fair street station,—a station used solely for passengers. The conditions are probably unmatched anywhere in the United States. The consolidated city of Kingston has a population of less than 25,000. For many years it was a community separated some three miles from the village of Rondout. Each then had its independent station on the line of the Ulster & Delaware Railroad; now they are united in one municipality. The West Shore Railroad was built later, passing about midway between the two pre-existing stations, and intersecting the Ulster & Delaware line. A new station at the junction was a necessary consequence, with the result that the old line was burdened with the expense of maintaining three stations for the uses of a small city. This is an onerous situation, considered in relation to a small local railroad struggling to overcome its indebtedness. The company contends that the effect is to cause serious delay in its summer or best season for traffic, and to involve the expense of maintaining the station, which at present is in a state of dilapidation, and would soon have to be practically rebuilt. * * * It appearing to the board that, under all the circumstances, the application is a meritorious one, the prayer of the petitioner is granted."

We do not deem it necessary to enter into an extended discussion of the facts and circumstances of the case. It is sufficient to say that we are not satisfied that the defendant was wrong in the conclusion it reached.

Subsequent to the contract made in 1881 between the Ulster & Delaware Railroad Company and citizens of Kingston conditions had changed. The West Shore Railroad Company had built its road, which intersects that of the Ulster & Delaware Railroad Company south of the Fair street station, and at that point a union station had been necessarily established by the two companies and by the Walkill Valley Railroad Company. There was also the Rondout station, in the south part of the city, which appeared to be required. Two stations in a city of less than 25,000 inhabitants may

properly be deemed sufficient. There is much force in the suggestion that it was unjust to compel the Ulster & Delaware Railroad Company to be at the expense of keeping up a third station and to stop its trains thereat. Whether the public interests required the continuance of the Fair street station or otherwise was a question for the board of railroad commissioners to pass upon, and we are not satisfied that its conclusion in that regard was erroneous. Undoubtedly it would be for the convenience of those represented by the relators if the station should be continued. They may sustain some damage by its discontinuance. In every city through which the tracks of a railroad extend, a large portion of the inhabitants are remote from a station, who undoubtedly would be benefited if such station were located near their place of business. But that fact does not require such location. A railroad company should not be compelled to place or continue its depots to accommodate the citizens of a section of a city, but should be made to locate them at such places as the public interests and convenience require. We are not prepared to hold that the determination of the defendant that the application of the Ulster & Delaware Railroad Company to discontinue the Fair street station was a meritorious one, and should be granted, is shown by the relators to be erroneous. We hence conclude that the determination of the defendant should be confirmed, with $50 costs and disbursements. All concur.

PARKER, P. J. I think the duty of the railroad commissioners was to inquire and determine whether, as between the railroad company and the general public, it was just to require the company to maintain this station. It was not their duty. and they had no jurisdiction, to decide, as between the company and any person or persons contracting with it, whether, under contract obligations, the company must maintain such station. That question, being beyond their jurisdiction, ought not to have controlled them, or entered at all into their consideration of the subject. Hence the existence of the contract upon which the relators rely is no ground for our reversing the decision of the commissioners. The real ground upon which we are asked to reverse is that under their contract the company was obligated to maintain the station. But that question was not properly before the commissioners, and therefore it was not one which at all influenced their decision. So far as the evidence bearing upon the public necessities, and the justice of requiring the company to maintain the station for its convenience, is concerned, that has been passed upon by the commissioners, and we should not disturb it. . I concur in the result.

LANDON, J. For reasons stated in People v. Board of Railroad Com'rs, 52 N. Y. Supp. 908, I think certiorari lies to review the determination of the board in giving or withholding consent to discontinue, but I concur in the result.