In the Matter of the Proposed Opening and Laying Out and Construction of TENNESSEE AVENUE, by the Town Board of the Town of Ithaca, across the Track and Right-of-Way of the Railroad Leased and Operated by the Delaware, Lackawanna and Western Railroad Company.

THE DELAWARE, LACKAWANNA AND WESTERN RAILROAD COM-PANY, Appellant; THE TOWN BOARD OF THE TOWN OF ITHACA and Others, Respondents.

Third Department, July 1, 1925.

Highways — proceeding by town of Ithaca under Railroad Law, §§ 90, 91, to adopt private street as public highway and to declare crossing of railroad public necessity — tract of land was divided into lots thirty years ago — only two occupied and one vacant house on street — street is on hill and crossing would be dangerous — access can be had by opening somewhat longer road paralleling railroad to connect with established street — no necessity for laying out road and opening crossing.

A public necessity was not shown in this proceeding by the town board of the town of Ithaca to adopt a private street as a public highway and to declare a crossing of a railroad to be a necessity, since it appears that the street in question, now a private street, is laid out on a plot of ground which was divided into lots about thirty years ago; that at the present time there are only two occupied houses and one vacant house on the street; that the street is on a very steep hill and it would be very dangerous to make a railroad crossing at the place desired; and that access may be had to a public highway from the houses in question and from some 105 lots in the plot of ground, by laying out a road somewhat longer than the proposed road, paralleling the railroad track and connecting with a road already established.

APPEAL by the Delaware, Lackawanna and Western Railroad Company from a decision of the town board of the town of Ithaca,

made and entered in the records of said board on the 29th day of December, 1924, in the above-entitled proceeding, determining that said town board take over and declare Tennessee avenue on the Ithaca Land Company tract as shown on a map of said tract, filed in the office of the clerk of the county of Tompkins on July 12, 1895, a town road and public highway, fifty feet in width, for all that portion of the said avenue which extends in a general easterly direction from its intersection with Lackawanna avenue across the said Delaware, Lackawanna and Western Railroad Company's right-of-way to the intersection of said Tennessee avenue with Indiana avenue, and determining that said avenue crossing the tracks of said railroad is necessary, and that application be made to the Public Service Commission of the State of New York to determine whether said avenue shall pass over or under such railroad or at grade.

*Stanchfield, Collin, Lovell & Sayles* [*Halsey Sayles* of counsel], for the appellant.

*Charles H. Newman,* for the respondent the Town Board of the Town of Ithaca.

*Cobb & Cobb* [*Harold E. Simpson* of counsel], for the respondents Bertha Apgar and another.

McCann, J.:

This is a proceeding to adopt a private street as a public highway and to declare a crossing of a railroad by such highway to be a public necessity. A branch of the Delaware, Lackawanna and Western railroad running northerly from Owego approaches the city of Ithaca on the top of a hill and descends such hill by a so-called " switch-back," by means of which it runs its trains northerly, then backs them down and along what is known as the middle switch, a distance of 4,907 feet and again northerly on what is called the lower switch into the city of Ithaca. The tracks of this " switch-back " form a " Z." Between the middle track and northerly track there are three houses, one of which is occupied by a family named Apgar, another by a family named Victoria; the third house is vacant. These houses are built on lots which are plotted on a map which was introduced in evidence as " Exhibit A." This plot shows 300 or 400 lots lying on either side of the three segments of the " Z " so called. The houses are located so that the occupants cannot get from their premises to the city of Ithaca without crossing one of these three segments. It had been their custom to cross the middle switch near a point where Tennessee avenue approached the middle switch and behind lot 171 as shown on " Exhibit A." This was an old farm crossing

and was recently closed by the railroad company. There is also in evidence another map, " Exhibit 1," made by the Delaware, Lackawanna and Western Railroad Company and upon which the lot lines shown on " Exhibit A " have been superimposed.

The streets as shown on these maps have never been laid out, graded or adopted as public streets.

The town board instituted this proceeding and after a hearing at which the railroad company was represented, proceeded under the provisions of sections 90 and 91 of the Railroad Law (as amd. by Laws of 1924, chap. 481, and Laws of 1921, chap. 698), and after taking testimony thereon, rendered a decision to the effect:

(1) That the said town shall " take over and declare Tennessee avenue on the Ithaca Land Company tract, as shown on a map of the said tract filed in Tompkins county clerk's office July 12, 1895, a town road and public highway fifty feet in width for all that portion of the said avenue which extends in a general easterly direction from its intersection with Lackawanna avenue across the Delaware, Lackawanna and Western Railroad Company's right of way to the intersection of said Tennessee avenue with Indiana avenue."

(2) " It is the opinion and finding of the said town board that the avenue above designated crossing the tracks of the said railroad is necessary, and that application be made to the Public Service Commission of the State of New York, pursuant to section 90 of the Railroad Law, to determine whether said avenue shall pass over or under such railroad or at grade."

From this decision and pursuant to the provisions of section 91 of the Railroad Law this appeal is taken.

The only question for review is that of the necessity for the proposed improvement.

That plot of land which lies north of and below the middle switch contains one hundred and five lots as shown upon the two maps above mentioned. The respondent Bertha Apgar is the owner of five lots on this plot and a dwelling in which nine people reside. Mr. Victoria, another respondent, owns three lots with a dwelling on one of them in which seven people reside. The third dwelling, as already indicated, is vacant; therefore, there is a total of but sixteen people at the present time who would be immediately benefited by the railroad crossing.

Many objections are offered by the railroad company. Out of one hundred and five lots on the plot below the middle switch, it appears that there are but three dwellings and so far as it appears from the testimony only nineteen lots have been sold since the map was filed thirty years ago. Judged by the past record of

sales of these lots there is no immediate prospect for a large increase of residents in this section. The town board has decided to adopt as a public street Tennessee avenue where it crosses the Lackawanna railroad to a point where it *intersects* Indiana avenue. This would not accomplish the purpose which is intended. The Victoria lots are located on that portion proposed to be adopted as a public street, but the Apgar lots are located at the further end of Indiana avenue and if the proposed improvement were made, it would be necessary for people living on the Apgar property to cross four lots (private property) or travel along Indiana avenue, which is also private property and unimproved, before reaching the proposed new street. The other dwelling house is located on Conover avenue, a distance of fourteen lots from the proposed new street. If the improvement as proposed were made, it would reach but twenty lots of the total number of one hundred and five, and at the present time as stated but sixteen people would be directly benefited. The portion of Tennessee avenue proposed to be taken is approximately 800 feet while the alternative route is but 200 feet longer. There are no cultivated lands requiring access to market except a garden of one acre. The proposed crossing if established would be a dangerous one because all trains which go over the middle switch, over which the crossing is proposed to be constructed, run backward, either going up or down the hill. Those residing on this particular plot would have to cross the middle switch on a grade crossing twice before reaching Hudson street, the natural outlet towards the city. The grade of the switch is one and fifty-two one-hundredths, and is constructed on a slope of land which has a grade of 400 feet to the mile. This, of necessity, would make a dangerous crossing especially for the operation of automobiles.

The alternative route which is suggested by the railroad company, instead of accommodating a few residents who are parties to this proceeding, would benefit the occupants of the one hundred and five lots on this particular plot, provided the various streets on the plot were graded. The proposition is to continue westerly and along the northerly side of the middle switch, a street approximately 1,000 feet in length and running from Tennessee avenue to Hudson street. This would make it unnecessary to cross the middle switch and the proposed highway would permit access to Hudson street which leads directly to the city of Ithaca. The railroad company also objects to the prospective cost which might be imposed in case the Public Service Commission should declare a necessity for an overhead or underground crossing. The prospects for such action on the part of the Public Service Commission can hardly be considered in view of the topographical conditions

Third Department, July, 1925. [Vol. 213

which exist and which would render overhead or underground crossings impracticable. For several years it has been the purpose of the Public Service Commission and of the Legislature to eliminate grade crossings so far as possible. This project, instead of eliminating, would create a new one. It is true that to adopt the proposed street suggested by the railroad company, there would be an expense upon the town, but it would be infinitesimal as compared to the share which the town would have to bear in case of an overhead or an underground crossing. To open such proposed street and crossing would not be to carry out the general purposes and plans of abandoning grade crossings especially one which would be as dangerous as the one here proposed. It would not be in accordance with the progress of the times. It would be a step backward. The slight expense which would be incurred by the town would be very small, when the danger to human life is taken into consideration. The question is raised as to the power of this court to interfere with the decision as to public necessity. In *Matter of City of New York (84th St.)* (189 App. Div. 315) such power was recognized. The court said: " The word ' necessary ' * * * has not a fixed character peculiar to itself. It admits of all degrees of comparison; and is often connected with other words, which increase or diminish the impression the mind receives of the urgency it imports.' * * *. ' Necessary ' may mean indispensable, or needful, or even reasonably convenient. It has been held with respect to crossings that necessity means not the *absolute* but the *practical* necessity, and that even the ' reasonable convenience ' satisfies the word. * * * Mere convenience should not satisfy the term, in view of the law that casts a part of the cost of the improvement upon the railroad corporation." Further the court said: " After all said, the principal consideration of the ' necessity ' is the public welfare."

For the reasons already stated this court cannot sustain a finding that necessity requires the laying out of this road and the opening of this crossing.

The decision of the town board should be reversed and the proceeding dismissed, with costs in favor of the appellant against the town of Ithaca.

All concur.

Decision of the town board reversed and proceeding dismissed, with costs in favor of the appellant against the town of Ithaca.