In the Matter of the Laying Out of a CERTAIN TOWN HIGHWAY in the Town of Ballston, County of Saratoga and State of New York; THE DELAWARE & HUDSON RAILROAD CORPORATION, Appellant; ABRAM V. LOUER and Another, as Receivers of SCHENECTADY RAILWAY COMPANY, Appellants.

TOWN BOARD OF THE TOWN OF BALLSTON, Respondent; JAMES B. WHITE, Petitioner, Respondent.

Order affirmed, with fifty dollars costs and disbursements, half to be paid by each appellant, on the authority of *Matter of Town Board* v. *Fitchburg R. R. Co.* (53 App. Div. 16; affd., 169 N. Y. 609); *Matter of City of New York (84th Street)* (189 App. Div. 315); *People ex rel. N. Y. & Queens Gas Co.* v. *McCall* (219 N. Y. 84); *Matter of Grade Crossings* (255 id. 320).

Hill, P. J., Rhodes and Bliss, JJ., concur; Crapser, J., dissents, with an opinion; Heffernan, J., dissents.

CRAPSER, J. (dissenting). The proceeding was commenced by the service on the appellants of notice of a hearing to be held on May 4, 1936, on the question of the necessity of the proposed highway, attached to which notice was a copy of an application, verified February 27, 1936, by one James B. White, to the town superintendent of highways of the town of Ballston, offering to dedicate the necessary lands for the proposed highway and petitioning that it be laid out as a town highway.

Hearings were held before the town board, which were adjourned from time to time, and testimony was taken. At the close of the hearing, on May 19, 1936, the town board made the decision and resolution appealed from.

The Schenectady-Ballston Branch of the Delaware & Hudson Railroad Corporation runs generally in a north and south direction, located between Ballston Lake, which is on the east, and the Ballston Spa State highway, which is on the west. The Saratoga line of the Schenectady Railway Company parallels the tracks of the Delaware & Hudson Company on the west.

The old Manning farm of about 242 acres, bounded on the west by the Schenectady-Ballston Spa State highway and on the east by Ballston lake, is intersected by the tracks of the railroads; about fifty-eight acres of the farm is on the east side, between the tracks and the lake, and the remainder of the farm is on the west.

James B. White, the petitioner herein, purchased the farm in 1926. It was then a stock farm, and, upon the purchase, proceeded to make a real estate development out of that portion lying between the tracks of the appellant and the lake shore. The plot was surveyed and laid out into 274 lots of about 50 by 100, and a map was made and filed in the county clerk's office of Saratoga county. The lots were advertised for sale to the public, and it is claimed that about thirty-five have been sold.

A corporation was organized, called White Beach, Inc., which was given a lease of fifteen acres along the lake shore at an annual rental of $500. White owns eighty per cent of the stock of the corporation, twenty per cent having been issued to various parties in exchange for services and materials. Only two cottages have been built on the development by purchasers of lots. The beach has been used extensively.

To give access to the real estate development and White Beach a road was carved through the main portion of the farm, beginning at the Schenectady-Ballston Spa State highway, and proceeding to the right in practically a straight line to the line of the railroad. There was no crossing over the tracks of the appellants at that point, but there was a farm crossing approximately seventy-five feet to the north for the use of the farm property immediately north of the Manning farm. The road has been connected to this farm crossing and on the east end of the road is White Beach.

Previous to the hearings White had sold that portion of the Manning farm lying west of the tracks, but had excepted and reserved to himself a strip of land sixty feet in width from the Schenectady-Ballston Spa State highway, extending to the right of way of the railroad; this strip was used for the road above described. White has offered to dedicate this sixty-foot strip of land, together with a fifty-foot strip from the boundary of the right of way to the shore of Ballston lake, and has petitioned that it be laid out as a town highway.

The original application offered to dedicate a strip of land forty feet in width from the State highway to the lake shore. The application was orally amended over the objection of the appellants at the hearing of May ninth, after the petitioner had rested his case, so as to be an offer to dedicate a strip as above described from the State highway to the Schenectady railway and fifty feet in width on the other side of the right of way of the appellants to the lake shore.

The crossing sought, and which the town board by its decision herein found to be necessary, is in a direct line with the strip above described and offered to be dedicated by White, and would straighten the road.

The appellants suggest as an alternative to the crossing sought herein that the town open a road laterally along the lake front, between the railroad and the lake, connected with the present existing highways at both the north and south ends of the lake, and thus obviating the need of new crossings of the tracks of the appellants.

The beach can be served without constructing any additional crossing over appellants' tracks from the north by constructing approximately 5,700 feet of road by the town and from the south by the construction of approximately 3,000 feet of road by the town. These roads, if constructed, would serve and benefit not only White Beach but all the owners and property along the west shore of Ballston lake.

The sole question for determination by the town board was whether the proposed road was necessary. It is pretty clear from the record that James B. White alone would be benefited in his real estate development by the road. There are many cottages and camps spread along the lake front, but each seems to have its own manner of access, and none of them joined in the petition for the laying out of this new road.

The use of White Beach and the two cottages is seasonal, from Decoration Day to the middle of September. In the ten years from the time White bought the farm to date only thirty-five out of a total of two hundred and seventy-four lots have been sold.

White proposes to dedicate the land to the town and have the town lay out the highway and the town determine the necessity that a proposed road be opened over the tracks of the appellants and that application be made by the town board to the Public Service Commission to determine the manner of crossing.

It is the policy of the State of New York to do away with grade crossings, the danger from them being great and none of them can be made safe. At the place where the proposed crossing is to be the appellants' tracks run through a cut from three to four feet deep. If the crossing is ordered at grade the road approaches on both sides will have to be cut down to the grade of the railroad, and the road will cross the tracks at an angle. The condition will be a dangerous one.

The road of the Delaware & Hudson Corporation over which the proposed road has been projected is a main line track; from four to eight heavy freight trains a day pass over this line; no passenger trains. The Schenectady Railway Company maintains a trolley line, which runs on parallel tracks to the Delaware & Hudson Railroad Company.

It was established by evidence at the hearing that a crossing at grade would cost approximately $4,000. The cost of an overhead crossing would be from $78,000 to $80,000. An underpass, the evidence shows, was impractical, and would cost at least $100,000.

The vote of the town board was that necessity required the opening of the proposed road over the tracks of the appellants, and was three to two in favor of the opening.

Sections 170 and 171 of the Highway Law provide for the laying out of a highway. They provide that whenever land is dedicated to a town for a highway proposed

therein the town superintendent may, with the consent of the town board and with or without a written application therefor, and without expenditure to the town, make an order laying out such highway, upon filing and recording in the town clerk's office with such order a release from the owner thereof. When a town superintendent shall lay out any highway he shall notify the county superintendent of highways, whose duty it shall be to either make a survey or cause the same to be made, and the town superintendent shall incorporate the survey in the order signed by him, and it shall be filed and recorded in the office of the town clerk.

There was no proper dedication in this case to enable the town superintendent to lay out the highway, and no survey was made and no description filed as required by the Highway Law.

In 1928 the Legislature directed the elimination of highway crossings at grade and authorized a bond issue of $300,000,000 by the State to carry out the elimination projects. This action fixed the policy of the State as being opposed to grade crossings.

The petitioner stated that he would not ask the town board to take over the road if he thought it would mean an overhead crossing.

If the action of the town board declaring the necessity of laying out this town road be approved by this court when the matter comes before the Public Service Commission that question will no longer be open. The only thing that the Public Service Commission can do is to determine the sort of a crossing, an overhead, an underpass or a grade crossing. Judging from the policy of the State in regard to grade crossings, it seems almost certain that they would not permit a crossing at grade over these railroads.

The question here is the necessity of the proposed crossing. The word necessary has not a fixed character peculiar to itself. It admits of all degrees of comparison. In connection with railroad crossings it has been held to mean practical necessity; mere convenience will not satisfy the term. The principal necessity is the public welfare.

The alternative route suggested by the railroads of laying out a road would accommodate many more people and would be much safer and would make it unnecessary to have any crossing of the railroads at all.

This court has the power to review the action of the town board, but is to treat this application in the nature of a review of the decision and not as it would an original application made to it in the first instance.

The burden rests upon the appellants to show affirmatively that the town board erred in its determination. A careful reading of the record brings us to the conclusion that it did err and that it proceeded contrary to the clear weight of evidence in arriving at its conclusion.

For the reasons stated this court cannot sustain the finding that necessity requires the laying out of this road and the establishment of a crossing across these two railroads which would serve but a few people and would be a dangerous crossing if it was permitted to be a grade crossing, and if an overhead crossing was ordered the cost would be entirely out of proportion to any benefits that would be derived.

The decision of the town board is reversed and the proceeding dismissed, with costs in favor of the appellants against the town of Ballston. (*Matter of Ten-*

*nessee Avenue*, 213 App. Div. 540; *Matter of City of New York* [*84th Street*], 189 id. 315; *Matter of Amsterdam, J. & G. R. R. Co.*, 86 Hun, 578.)